# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOHN HAROLD WYCOFF, JR.,                    Case No. 1:13-cv-641
      Plaintiff,                            Barrett, J.
                                            Litkovitz, M.J.
      vs.


COMMISSIONER OF                             **REPORT AND**
SOCIAL SECURITY,                            **RECOMMENDATION**
      Defendant.


        Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 16), the

Commissioner's response in opposition (Doc. 22), and plaintiff's reply memorandum.

(Doc. 23).

## I. Procedural Background

        Plaintiff filed applications for DIB and SSI in October 2009, alleging disability since

August 16, 2006, due to a left knee replacement, shoulder problems, and right ankle problems.

(Tr. 182).[1] These applications were denied initially and upon reconsideration. Plaintiff,

through counsel, requested and was granted a *de novo* hearing before administrative law judge

(ALJ) Curt Marceille. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ

hearing, which was conducted via videoconference. On April 2, 2012, the ALJ issued a decision

denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals

---

[1] The page numbers referenced herein are taken from the administrative record.

Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.   *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).   Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.   *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B.    The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The [plaintiff] has not engaged in substantial gainful activity since August 16, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: status post left knee total replacement, degenerative joint disease of the right ankle, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the [plaintiff] is further limited to work involving no climbing stairs, ramps, ladders, ropes, or scaffolds; no squatting, kneeling, crouching or crawling; use of a cane for walking; no fast-paced production work; simple and some multi-step tasks; no hazards; no work on uneven surfaces; no more than occasional stooping or balancing; and no exposure to extreme heat, cold, or humidity.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1964 and was 41 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the [plaintiff]'s past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from August 16, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-28).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.   *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[2] Plaintiff's past relevant work was as a painter, order picker, material handler, and laborer.   (Tr. 64, 183).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 16,400 sedentary, unskilled jobs in the regional economy, such as order clerk, telephone quotation clerk, and sorter.   (Tr. 27, 65).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746); *see also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D.  Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ's residual functional capacity (RFC) finding is not supported by substantial evidence; (2) the ALJ failed to properly evaluate the medical source opinions of record; and (3) the ALJ erred in evaluating plaintiff's credibility and subjective complaints of pain.

**1. Whether the ALJ erred in assessing plaintiff's residual functional capacity (RFC)**

Plaintiff contends the ALJ erred in formulating an RFC that is not supported by substantial evidence. (Doc. 16 at 12-23). The arguments plaintiff makes in support of this assignment of error challenge the ALJ's evaluation of the medical opinion evidence and the ALJ's credibility finding. As such, these arguments relate to plaintiff's second and third assignments of error. The Court will therefore address plaintiff's arguments below in connection with the second and third assignments of error.

**2. Weight to the medical source opinions**

Plaintiff's second assignment of error alleges that the ALJ erred by failing to properly weigh the medical source opinions of record. (Doc. 16 at 23-28). It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the

6

ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544.

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." A non-treating source's opinion is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Wilson,* 378 F.3d at 544. The opinion of a non-treating but examining source is generally entitled to more weight than the opinion of a nonexamining source. *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)[4]; *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). Because a nonexamining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a nonexamining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to

---

[4] Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion that were previously found at §§ 404.1527(d), 416.927(d) are now found at §§ 404.1527(c), 416.927(c).

which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

### A. Medical opinions related to plaintiff's mental impairments

Plaintiff alleges that the ALJ erred by failing to give "controlling weight" to the opinion of his treating psychologist, Dr. Kevin C. Murphy, Ph.D., and by giving greater weight to the assessment of the nonexamining state agency psychologist, Dr. John Waddell, Ph.D. Dr. Murphy evaluated plaintiff on May 18, 2010, pursuant to a referral by plaintiff's workers compensation attorney. (Tr. 480-82). In addition to the initial evaluation report, the record includes monthly treatment notes by Dr. Murphy for the period September to November 2010 and January 2011 through January 2012, as well as two treatment summaries. (Tr. 483, 505-08, 589-91). In addition, Dr. Murphy completed a Mental RFC Questionnaire on May 25, 2011. (Tr. 509-13). Dr. Murphy diagnosed plaintiff as suffering from a depressive disorder, NOS, with symptoms of anhedonia or pervasive loss of interest in almost all activities, decreased energy, feelings of guilt or worthlessness, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, apprehensive expectation, motor tension, emotional lability, and sleep disturbance. (Tr. 509-10). Dr. Murphy reported that plaintiff had shown a fair response to cognitive behavioral psychotherapy. (Tr. 509). Dr. Murphy opined that with regard to the mental abilities and aptitudes needed to do unskilled work, plaintiff was unable to meet competitive standards as to his ability to maintain attention for two-hour segments, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress. (Tr. 511). Dr. Murphy also opined that plaintiff was seriously limited, but not precluded, in his ability to maintain regular attendance and be punctual within customary, usually

8

strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and respond appropriately to changes in a routine work setting.  (*Id.*).  Dr. Murphy opined that plaintiff was unable to meet competitive standards with regard to his ability to deal with the stress of semiskilled and skilled work.  (Tr. 512).  Dr. Murphy further opined that plaintiff's ability to set realistic goals or make plans independently of others was seriously limited, but not precluded, with respect to the mental abilities and aptitudes needed to do such work.  (*Id.*).  All mental abilities and aptitudes needed to do particular types of jobs were unlimited or very good.  (Tr. 512).  Dr. Murphy concluded that on average, plaintiff would miss about three days per month from work due to his impairments or treatment and that his mental impairments were expected to last at least 12 months.  (Tr. 513).

Dr. Waddell reviewed the mental health evidence and completed a Psychiatric Review Technique and Mental RFC Assessment in February 2010.  (Tr. 415-31).  Dr. Waddell opined that plaintiff had no restrictions in his activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of an extended duration.  (Tr. 425).  Dr. Waddell further determined that the evidence did not establish the presence of the "C" criteria for purposes of the mental impairment Listings.  (Tr. 426).  Dr. Waddell found plaintiff's allegations were "credible but not limiting."  (Tr. 431).  Dr. Waddell concluded that plaintiff has the capacity to

complete a variety of tasks that do not require a rapid or consistent pace and that plaintiff can engage appropriately in social interactions.   (Tr. 432).   State agency psychologist Dr. Marianne Collins, Ph.D., reviewed the file in August 2010 and affirmed Dr. Waddell's assessment.   (Tr. 471).

Dr. Donald J. Tosi, Ph.D., evaluated plaintiff on behalf of the Ohio Bureau of Workers Compensation (OBWC) on March 29, 2011.   (Tr. 576, 581-86).[5]   The evaluation was in connection with an injury plaintiff sustained on February 22, 2000.   (Tr. 576).   The allowed conditions included aggravation of pre-existing depressive disorder.   (*Id*.).   Plaintiff described his daily activities as "taking care of dogs," using the telephone, cooking, attending church on occasion, reading newspapers, watching television, listening to the radio, dining out, and attending medical appointments.   (Tr. 584).   His mental status examination was largely normal except that his concentration was mildly reduced and he displayed mild psychomotor retardation, "likely due to medication effects."   (Tr. 583).   He reported diminished interests and feeling downhearted.   (*Id*.).   Dr. Tosi diagnosed plaintiff as suffering moderate depression based on the Back Depression Inventory-II.   (Tr. 584).   Dr. Tosi concluded that plaintiff had not reached maximum medical improvement but should do so in the next four to five months; the current treatment was necessary and appropriate; vocational rehabilitation was not indicated at that time; plaintiff was "too unstable to return to his former position of employment"; and plaintiff's functional limitations included depressed mood, psychomotor retardation, low energy and diminished interests.   (Tr. 585).

---

[5] Other records are interspersed with Dr. Tosi's report.   (Tr. 577-580).

The ALJ gave treating psychologist Dr. Murphy's mental RFC assessment "neither controlling nor minimal weight."  (Tr. 25).  The ALJ rejected Dr. Murphy's opinion that plaintiff was unable to meet competitive standards in maintaining attention, performing at a consistent pace, and dealing with work stress, and that he would likely miss work three days each month.  (Tr. 25, citing Tr. 509-13).   The ALJ found that Dr. Murphy's opinion was not well-supported by his own treatment notes and was not consistent with plaintiff's "minimal treatment history."  (Tr. 25).   The ALJ stated that the few session notes that were made available did not contain any mental status examination findings.  (*Id*.).   The ALJ also noted that other physicians such as plaintiff's orthopedist, while admittedly not psychiatrists, never noted abnormal mood or affect (Tr. 528-46), and Dr. Murphy's opinion overall was not adequately supported by the evidence.   (Tr. 25).

The ALJ instead gave "substantial weight" to the opinions of Drs. Waddell and Collins, who found: plaintiff has the ability to perform a variety of tasks that do not involve rapid or consistent pace; he can relate to others appropriately and handle simple and multi-step tasks; and he cannot perform fast-paced production work.   (Tr. 25, citing Tr. 429-32, 471).   The ALJ declined to give Dr. Tosi's opinion that plaintiff was "too unstable to return to his former position of employment" any weight on the ground this determination is one that is reserved to the Commissioner; however, the ALJ noted he had considered Dr. Tosi's clinical findings as discussed earlier in his decision.   (Tr. 25, citing Tr. 585).

The ALJ's decision to reject Dr. Murphy's assessment of plaintiff's functional limitations is not substantially supported.   The ALJ found that Dr. Murphy's opinion is not well- supported by Dr. Murphy's own treatment notes and is inconsistent with plaintiff's "minimal treatment

11

history."   (Tr. 25).   In making his finding, the ALJ ignored a considerable portion of Dr.

Murphy's treatment notes and mischaracterized Dr. Murphy's treatment history.   In his decision,

the ALJ referenced a "handful" of treatment notes provided by Dr. Murphy.   (Tr. 22-23, 24,

citing Tr. 477-83, 502-13).   The treatment notes included Dr. Murphy's report of his initial May

2010 psychological evaluation, his treatment summary dated September 15, 2010, and treatment

notes and a treatment summary for the period September 2010 to May 2011.   (Tr. 479-83,

505-08).   These records show that plaintiff saw Dr. Murphy a total of eight times before Dr.

Murphy issued his mental RFC assessment on May 25, 2011.   (Tr. 480-83, 505-08).   The ALJ

provided no explanation for why he characterized this level of treatment as "minimal."   (Tr. 25).

Further, the ALJ made no mention whatsoever of additional treatment notes Dr. Murphy

submitted for eight more visits between June 2011 and January 2012, which post-date the May

2011 mental RFC assessment.   (Tr. 589-91).   In light of Dr. Murphy's treatment notes

documenting plaintiff's regular, ongoing treatment consisting of 16 visits over an 18-month

period, the ALJ's finding that Dr. Murphy's mental RFC assessment was not consistent with

plaintiff's "minimal treatment history" is not substantially supported.   (Tr. 25).   Nor is the

ALJ's finding that Dr. Murphy's opinion is not well-supported by his own treatment notes

substantially supported in view of the ALJ's failure to even acknowledge a significant portion of

Dr. Murphy's monthly treatment notes.   (Tr. 589-91).

        The ALJ also failed to provide support for his finding that Dr. Murphy's opinion was

"inadequately supported" by the evidence as a whole.   (Tr. 25).   In particular, the ALJ failed to

discuss apparent consistencies between the findings of examining psychologist Dr. Tosi and Dr.

Murphy.   (Tr. 23).   Dr. Tosi reported results from the Millon Beck Depression Inventory-II and

also gave an opinion on plaintiff's functional limitations.   (Tr. 584-85).   Dr. Tosi concluded that

plaintiff's functional limitations rendered plaintiff "too unstable to return to his former position

of employment."   (*Id.*).   The ALJ properly found that he was not bound by Dr. Tosi's

conclusion on plaintiff's job capacity.   (Tr. 25).   *See Coldiron v. Comm'r of Soc. Sec.*, 391 F.

App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.,*

359 F. App'x 574, 578 (6th Cir. 2009)).   However, the ALJ should have discussed whether Dr.

Tosi's test results and findings as to plaintiff's functional limitations supported Dr. Murphy's

opinion.   The functional limitations Dr. Tosi assessed, coupled with Dr. Tosi's conclusion that

those limitations rendered plaintiff too unstable to return to his former employment, suggest the

presence of serious psychological symptoms and appear to be consistent with Dr. Murphy's

contemporaneous mental health assessment.

In addition, it appears that the ALJ improperly discounted Dr. Murphy's opinion because

Dr. Murphy initiated mental health treatment pursuant to a referral by plaintiff's attorney.   The

ALJ noted that plaintiff was referred to Dr. Murphy by his attorney many years after the alleged

onset date for reasons that plaintiff did not fully understand.   (Tr. 24).   The Sixth Circuit has

cautioned, however, that "a claimant's failure to seek formal mental health treatment is 'hardly

probable' of whether the claimant suffers from a mental impairment. . . ."   *Boulis-Gasche v.*

*Comm'r of Soc. Sec.,* 451 F. App'x 488, 493 (6th Cir. 2011) (citations omitted).   *See also*

*Blankenship v. Bowen*, 874 F .2d 1116, 1124 (6th Cir. 1989) (questioning the practice of

censuring claimants with mental impairments for exercising poor judgment in not seeking

treatment).   The ALJ acted improperly insofar as he discounted Dr. Murphy's medical opinion

because plaintiff was referred to Dr. Murphy by counsel.

Instead of crediting Dr. Murphy's opinion, the ALJ relied on the opinion of nonexamining psychologists Drs. Waddell and Collins.   Plaintiff alleges that this was error because: (1) the ALJ gave no indication as to why the opinions of the psychological consultants are "well-supported by the medical or psychological evidence because none is mentioned by the ALJ and little is mentioned by the non-examiners"; (2) the ALJ indirectly relied on a January 8, 2010 consultative examination by Dr. Berg which is not part of the case record but is mentioned in Dr. Waddell's report (Tr. 431); (3) and the state agency reviewing psychologists did not have Dr. Murphy's records before them.   (Doc. 16 at 16, 25).[6]   The Court agrees that the ALJ erred by giving substantial weight to the reviewing psychologists' opinions on these grounds.   (Tr. 25).

The ALJ credited the nonexamining psychologists' opinions because he found their rationales were clearly "well-supported by the psychological evidence."   (Tr. 25).   However, the ALJ provided no explanation for his finding.   The Court recognizes that an opinion from a nonexamining source, such as a state agency consultant, may, "in appropriate circumstances," be given greater weight than that of an examining or treating source.   Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *3.   However, where, as here, much of the evidence of plaintiff's mental impairments post-dates the state agency reviewer's opinion and the ALJ nonetheless credits the reviewer's opinion, the ALJ must acknowledge that fact and provide sufficient reasons for doing

---

[6] Plaintiff also alleges in his reply brief that if the basis for Dr. Murphy's opinion was unclear, the ALJ should have recontacted Dr. Murphy to learn the basis of his opinion under SSR 96-5p, and the ALJ likewise should have recontacted Dr. Tosi.   (Doc. 23 at 11).   Plaintiff has waived this argument by raising it for the first time in his reply brief and failing to develop the argument factually or legally.   *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument in a Statement of Errors challenging an ALJ's non-disability determination amounts to a waiver of that argument).   *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.   It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

so to enable the Court to engage in meaningful judicial review.  *Cf. Blakley*, 581 F.3d at 409

(where ALJ credits opinion of nonexamining source who was without opportunity to review

subsequent reports and records of consulting and treating physicians, there must be "some

indication that the ALJ at least considered these facts before giving greater weight to an opinion

that is not 'based on a review of a complete case record.'") (citing *Fisk v. Astrue*, 253 F. App'x

580, 585 (6th Cir. 2007) (quoting SSR 96-6p, 1996 WL 374180, at *3)).   Neither Dr. Waddell

nor Dr. Collins had Dr. Murphy's treatment notes before them when they reviewed the record

and issued their opinions in February 2010 and August 2010, respectively.   (Tr. 429-32, 471).

Nor were they able to review the March 2011 assessment of the examining psychologist, Dr.

Tosi.   The ALJ gave no indication that he considered the fact that the reviewing psychologists

did not have an opportunity to review *any* of the treating psychologist's treatment records or Dr.

Tosi's report.

       The ALJ also erred by crediting Dr. Waddell's report because the report relies on medical

evidence that is not part of the record.   Dr. Waddell relied on findings from a consultative

examination that was performed by "Dr. Berg" on January 8, 2010.   (Tr. 431).   Dr. Berg's

report is not in the record and the ALJ did not mention the report in his decision.   Thus, there is

no means of ascertaining the full contents or supportability of Dr. Berg's report.   The record

therefore does not provide a basis for meaningful judicial review of the ALJ's decision to credit

Dr. Waddell's opinion.

       Thus, the ALJ erred by failing to give "good reasons" for declining to defer to the opinion

of plaintiff's treating psychologist, Dr. Murphy.   The ALJ's decision that Dr. Murphy's opinion

is inconsistent with his minimal treatment history, and is not supported by Dr. Murphy's own

findings and by the other evidence of record, is not substantially supported. Plaintiff's second assignment of error should be sustained on this basis.

### B. Medical source opinions related to plaintiff's physical limitations

### i. No treating source opinion

Plaintiff alleges that the ALJ erred by giving greater weight to the opinions of the one-time examining physicians than he gave to the findings of plaintiff's treating physicians, Dr. Sambhu Choudhury, M.D., and Dr. Bruce Siegel, D.O. (Doc. 16 at 27). Plaintiff contends that the ALJ did not give "good reasons" for his decision to afford no weight to the reports or opinions of Dr. Choudhury and to the "voluminous chronological record" of Dr. Siegel.[7] (*Id*. at 24-25). Plaintiff further alleges that the ALJ erred by giving "substantial weight" to the assessments of the nonexamining state agency physicians. (*Id*. at 27).

In response, the Commissioner contends that plaintiff's treating physicians did not provide medical opinions regarding plaintiff's impairments and resulting limitations. (Doc. 22 at 12-14). The Commissioner alleges that the ALJ was not required to assign weight to their medical observations.

The ALJ did not err by failing to weigh the "opinions" of Drs. Choudhury and Siegel. The record contains extensive treatment notes and records from treating orthopedic surgeon Dr. Choudhury dated September 2006 until the date of the ALJ hearing. (Tr. 253-289, 306-09, 312-15, 319, 349-56, 358-59, 361-71, 375-76, 379-82, 443-53, 529-46, 579-80). The record

---

[7] Plaintiff also notes that the ALJ did not give weight to the opinions of "treating" physicians Dr. Andrew Roth, M.D., Dr. Robert R. Burger, M.D., and Drs. Grefer, Hummel, and Bever of Commonwealth Orthopedic Centers (Tr. 20-22). (Doc. 16 at 26-27). However, plaintiff acknowledges that none of these physicians issued a physical capacity evaluation and plaintiff does not assign as error the ALJ's failure to afford weight to the opinions of these physicians.

also includes numerous treatment notes prepared by treating pain control specialist Dr. Siegel for

the period December 2008 until the date of the ALJ hearing.   (Tr. 393-414, 461-70, 487-501,

548-75).   However, neither of these treating physicians rendered a medical opinion on plaintiff's

functional limitations.   To the extent plaintiff contends these treating physicians' treatment notes

simply document the severity and symptoms of his physical impairments, such records do not

qualify as "medical opinions" under the Social Security regulations.   20 C.F.R. §§

404.1527(a)(2), 416.927(a)(2) (a medical opinion "reflect[s] judgments about the nature and

severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can

still do despite impairment(s), and your physical or mental restrictions.").   Plaintiff has not

shown that the treating physicians' notes include medical judgments about the nature and

severity of his physical impairments and what he can still do despite his physical impairments.

Accordingly, the ALJ had no duty to give "good reasons" for the weight given the information

these physicians provided.   *Bass v. McMahon,* 499 F.3d 506, 510 (6th Cir. 2007).   Plaintiff

references no other medical opinion by a treating physician.   Accordingly, the ALJ did not err by

failing to properly weigh the "opinions" of Drs. Choudhury and Siegel.

### ii.   Examining and nonexamining medical source opinions

Plaintiff alleges that the ALJ did not provide substantially supported reasons for the

weight given the examining and nonexamining medical sources; the ALJ provided no

explanation for his finding that the nonexamining physicians' assessments were well-supported

by the medical evidence; and the ALJ erroneously gave greater weight to the opinions of the

nonexamining state agency physicians, whose assessments were not based on a complete review

of the record.   (Doc. 16 at 14-16, 26).

17

The ALJ weighed the opinions of several examining physicians who evaluated plaintiff's physical impairments on behalf of the OBWC: Dr. V.P. Mannava, M.D., Dr. Judith M. Wachendorf, M.D., and Dr. Alan Kohlhaas, M.D.   Dr. V.P. Mannava examined plaintiff in August 2008 and found that most of plaintiff's limitations were related to his left leg.   (Tr. 336-39).   Dr. Mannava found that in spite of a left total knee replacement, range of motion of the left knee was limited to 10 degrees extension and 100 degrees flexion, plaintiff continued to experience pain, and his gait was markedly altered with a limp on the left.   (Tr. 338).   Dr. Mannava found that plaintiff's standing and walking were limited, he was unable to squat "very much," he had difficulty going up and down stairs, and these difficulties also limited his ability to twist/turn and lift/carry.   (*Id*.).   Dr. Mannava opined that plaintiff had not reached maximum medical improvement because of proposed active treatment.   (*Id*.).   Dr. Mannava assessed plaintiff as able to lift/carry up to 20 pounds occasionally (up to 33% of the workday); lift/carry up to 10 pounds continuously (67% to 100% of the workday); bend and sit frequently (34% to 66% of the workday); twist/turn, reach below the knee, push/pull, and stand/walk occasionally; and never squat/kneel.   (Tr. 339).   The ALJ gave Dr. Mannava's opinion "substantial weight" on the ground it "conforms to the evidence of record and Dr. Mannava's own independent clinical examination."   (Tr. 24).

Dr. Wachendorf examined plaintiff on April 23, 2009.   (Tr. 332-35).   Dr. Wachendorf's impression was sprain of the left knee, tear of the medial meniscus, primary osteoarthritis, degenerative joint disease of the left knee and peroneal nerve entrapment, and status post total knee replacement in February 2008 and peroneal nerve release in January 2009.   (Tr. 333).   Dr. Wachendorf noted improved extension of plaintiff's left knee but worsened flexion with plaintiff

18

at "-30 degree flexion contracture," which was causing him to lean toward the left when he walked. (Tr. 333-34). Dr. Wachendorf noted "quite a bit" of inflammation around the left knee and ongoing warmth and swelling. (Tr. 334). Dr. Wachendorf opined that plaintiff was limited to ambulating for five minutes at a time with a cane as needed, sitting for 30 minutes at a time, standing for less than five minutes at a time, and no squatting, kneeling, or climbing. (*Id*.). Dr. Wachendorf concluded that plaintiff was not at maximum medical improvement and recommended that he use a cane because of his left knee problems; that he be re-evaulated for further surgery by his treating orthopedist or in the alternative attend water therapy; and that he take anti-inflammatory medication. (*Id.*). The ALJ gave Dr. Wachendorf's opinion "minimal weight" because he found that the opinion was at variance with the other opinions on plaintiff's physical function and with plaintiff's own reports, and Dr. Wachendorf had "vastly overstated" plaintiff's limitations. (Tr. 24). Specifically, the ALJ noted that plaintiff had testified at the administrative hearing that he was able to walk uninterrupted to a nearby drive-through restaurant; he had described walking his dogs elsewhere; and a number of plaintiff's daily activities, such as reading the newspaper or watching television, suggested an ability to sit for sustained periods of time. (*Id.*).

Dr. Kohlhaas, an orthopedist, examined plaintiff in September 2009. (Tr. 330-31). Dr. Kohlhaas reported that plaintiff ambulated with a cane in his left hand. (Tr. 330). He lacked five degrees of extension in his left knee; there was swelling in the knee; and there was muscle atrophy of the left thigh as compared to the right side. (*Id*.). Dr. Kohlhaas opined that range of motion of the left knee was fixed and he did not expect to see any further medical improvement in the post-total knee replacement and peroneal release. (Tr. 331). Dr. Kohlhaas opined that

19

plaintiff could not return to his former position of employment because of the lifting and walking required, and because of his ambulation with a cane plaintiff was functioning "at the sedentary type level" and he could perform any "sit-down type job."   (Tr. 330-31).   The ALJ gave this opinion "substantial weight," stating he found the opinion "to conform to the evidence of record and general tendencies of the opinion evidence[.]"   (Tr. 25).

The ALJ also considered a physical RFC assessment prepared by nonexamining state agency physician Dr. Diane Manos, M.D., on February 26, 2010 (Tr. 433-40), which was affirmed by Dr. Elizabeth Das, M.D., on August 17, 2010.   (Tr. 472).   Dr. Manos opined that plaintiff could lift/carry up to 20 pounds occasionally and 10 pounds frequently, stand no more than 4 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday; pushing/pulling was limited in the lower extremities; plaintiff was limited to occasional climbing of ramps/stairs, kneeling and crouching; frequent balancing and stooping; and no climbing of ladders/ropes/scaffolds or crawling.   (Tr. 434-35, 440).   Dr. Manos also limited plaintiff from all exposure to heights/hazards/machinery due to degenerative joint disease of the knees.   (Tr. 437).   The ALJ gave these opinions restricting plaintiff to a range of light work "substantial weight" on the grounds both physicians are "acceptable medical sources with expertise in disability evaluation" and their "rationales are clearly well-supported by the medical evidence"; however, the ALJ further restricted plaintiff to sedentary work based on his subjective complaints.   (Tr. 25).   The ALJ found this restriction was "not inconsistent" with the reviewing physicians' opinions.

Thus, the examining and nonexamining physicians assessed varying degrees of functional limitation.   The functional limitations imposed by Dr. Wachendorf conflicted, in part, with those

assessed by examining physicians Drs. Mannava and Kohlhaas and nonexamining physicians

Drs. Manos and Das.   It is the ALJ's duty to resolve such conflicts in the medical evidence.

*Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Sec. of H.H.S.*, 823 F.2d 922,

928 (6th Cir. 1987).   The ALJ's determination must stand if it is supported by substantial

evidence, regardless of whether the reviewing court would resolve the conflicts in the evidence

differently.   *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).   *See also Boyle v.*

*Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).   Here, the ALJ resolved the conflicts in the medical

evidence by giving the least weight to Dr. Wachendorf's assessment because it was not

consistent with the opinions of Drs. Mannava and Kohlhaas and with plaintiff's own reported

limitations.   (Tr. 24).   The Court is unable to conclude on its review of the record that there is

substantial evidence to support the ALJ's resolution of the conflicting medical evidence on these

grounds.

    First, the ALJ only generally referred to the "evidence of record" as supporting the

opinions of Drs. Mannava and Kohlhaas.   (Tr. 24-25).   The ALJ also gave substantial weight to

the opinions of Drs. Manos and Das because they were "well supported by the medical

evidence."   (Tr. 25).   The ALJ did not explain the basis for these findings.   The Court is

therefore unable to discern what evidence the ALJ relied on to credit these physicians' opinions

over Dr. Wachendorf's opinion and whether such evidence substantially supports his decision.

    Further, the ALJ's finding that Dr. Wachendorf's opinion was not consistent with

plaintiff's own report of his functioning is not substantially supported by the record.   (Tr. 24).

The ALJ found that Dr. Wachendorf "vastly overstated" plaintiff's limitations.   (*Id*.).   The ALJ

noted that plaintiff had testified at the administrative hearing that he was able to walk

21

uninterrupted to a nearby drive-through restaurant; he had described walking his dogs elsewhere; and a number of plaintiff's daily activities, such as reading the newspaper or watching television, suggested an ability to sit for sustained periods of time. (*Id.*). However, it is not clear how plaintiff's self-described activities denote an ability to walk/stand for more than five minutes at a time or to sit for longer than 30 minutes uninterrupted. In fact, plaintiff testified that the restaurant to which he walked was one block from his house (Tr. 49, 53), which does not appear to be inconsistent with the ability to walk/stand for more than five minutes. *See Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (ALJ should have considered the plaintiff's "qualifications as to *how* he carried out [his described] activities," such as the fact that his "so-called 'daily walk'" was simply to the mailbox at the end of his driveway). Further, for reasons explained in connection with plaintiff's third assignment of error, the ALJ's credibility finding is not substantially supported by the record and is not entitled to deference. It follows that the ALJ's decision to discount Dr. Wachendorf's opinion, which is based in part on the ALJ's rejection of plaintiff's subjective complaints, is likewise not substantially supported by the record.

For these reasons, the ALJ erred in weighing the opinions of the examining and nonexamining physicians pertaining to his physical impairments. The ALJ did not cite substantial evidence in support of his decision to give "substantial weight" to the assessments of examining physicians Drs. Mannava and Kohlhaas and nonexamining physicians Drs. Manos and Das and "minimal weight" to the assessment of examining physician Dr. Wachendorf.

### C. Conclusion

The ALJ erred by failing to properly weigh the medical source opinions related to plaintiff's mental impairments. Further, the ALJ's decision as to the weight to afford the

opinions of the examining and nonexamining physicians regarding plaintiff's physical impairments is not supported by substantial evidence. Plaintiff's second assignment of error should be sustained.

### 3. The ALJ's credibility determination

Plaintiff alleges as his third assignment of error that the ALJ erred in assessing his credibility. (Doc. 16 at 28-31; Doc. 23 at 14-15). Plaintiff argues that the ALJ engaged in circular logic by issuing a boilerplate credibility finding to the effect that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (Doc. 16 at 12-13). In support of his position, plaintiff cites to *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010), in which the Seventh Circuit held that similar boilerplate language was not sufficiently detailed to provide the reviewing court with the grounds upon which the RFC determination was based.

The Court agrees that the boilerplate language cited by the ALJ is virtually meaningless. However, in contrast to *Parker*, the boilerplate language the ALJ used in this case is followed by a detailed basis for the ALJ's credibility determination. In fact, plaintiff concedes that the ALJ considered "a broad range of information" in rendering his credibility determination. (Doc. 16 at 28). Thus, plaintiff does not challenge the ALJ's failure to conduct a credibility analysis, but instead plaintiff alleges that the ALJ committed a number of errors in performing that analysis. Specifically, plaintiff contends that the adverse credibility decision is not supported because it

was the product of unwarranted assumptions by the ALJ, intuitive decision-making, unfounded suspicion, and a lack of knowledge as to the OBWC's operations.   (*Id*.).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.   *Rogers*, 486 F.3d at 247 (citations omitted).   In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly.   *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec'y of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981). In evaluating a claimant's credibility, the ALJ considers objective medical evidence and other evidence including (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) "[t]he type, dosage, effectiveness, and side effects of any medication"; (5) forms of treatment other than medication that the claimant receives to relieve his symptoms; and (6) other measures used to relieve the pain.   20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).   "The claimant's credibility [regarding the intensity and persistence of symptoms] may be properly discounted to a certain degree . . . where an [ALJ] finds contradictions among the medical reports, claimant's testimony, and other evidence."   *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (internal quotation marks omitted).

The ALJ is not free to make credibility determinations "based solely upon an 'intangible or intuitive notion about an individual's credibility.'"   *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).   Rather, such determination must be supported by the record. *Id.*   In those cases where a claimant's subjective complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must

determine the claimant's credibility as to such complaints "based on a consideration of the entire case record." *Id.* "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Id.*

Here, the ALJ relied on a number of factors to find that plaintiff's statements as to the severity of his symptoms were not fully credible. The ALJ found that while plaintiff's subjective complaints "may suggest genuine limitations in functioning that the objective evidence is not able to demonstrate adequately," his alleged symptoms were not fully credible in light of plaintiff's activities of daily living, treatment history, and other inconsistencies. (Tr. 24). However, in considering the record, the ALJ misconstrued or misrepresented material evidence and made a number of unsupported assumptions.

First, the ALJ discounted plaintiff's credibility based on an erroneous representation of the evidence related to plaintiff's treatment history with Dr. Siegel. The ALJ documented plaintiff's considerable treatment history with Dr. Siegel. The ALJ found that Dr. Siegel's ongoing physical examinations "consistently revealed decreased muscle mass and tone of the left quadriceps, Grade II crepitus with diminished strength of the left knee, decreased range of motion, a positive Anterior Drawer test, swelling, limited endurance and weakness with extension and flexion[.]" (Tr. 21, citing Tr. 393-97, 399, 401, 403, 405, 407, 409, 411, 413; 460, 463, 465-70; 488-91, 493, 495, 497, 499-501; 548-75). However, the ALJ went on to state:

> But I also note that the claimant was noted as being 'opioid focused' and 'mercilessly inquired' about obtaining additional OxyContin and Pecocet [sic]. [Tr. 397]. He also appeared to desire benzodiazepines, or a 'nerve pill.' (*Id.*). While there was no evidence of misuse of medication, such a fervent desire to obtain medication could motivate a claimant to overstate the severity of his symptoms.

(Tr. 21).   The ALJ found that Dr. Siegel was "so troubled by this that he ultimately terminated the treatment relationship."  (Tr. 24, citing Tr. 397-98).   The ALJ's statement that Dr. Siegel terminated his treatment relationship with plaintiff is not accurate.   Dr. Siegel's treatment notes reflect that he had decided as of August 4, 2009, to dismiss plaintiff from his practice and that he planned to discuss the matter with another medical provider, Dr. Oleski.   (Tr. 398).   However, the record shows that Dr. Siegel decided against this course of action and continued to treat plaintiff.   (Tr. 393-96, 487-501, 548-75).   In fact, Dr. Siegel's treatment notes from an office visit the following month document that Dr. Siegel discussed with plaintiff the appropriate use of opioids for pain management, and it was Dr. Siegel's opinion that the use of Oxycodone for plaintiff's knee pain was appropriate.   (Tr. 396).   Thus, the ALJ erred by relying on erroneous information about a medical concern with plaintiff's opioid use to discount plaintiff's credibility. This error was not harmless.   Dr. Siegel's decision to alter plaintiff's medication but to continue treating plaintiff with opioids for pain management appears to support rather than diminish plaintiff's allegations of debilitating pain.   Further, the ALJ suggested that Dr. Siegel's objective findings supported plaintiff's complaints of pain; yet the ALJ discounted the significance of those objective findings based in part on his belief that Dr. Siegel had dismissed plaintiff from his practice due to an improper focus on obtaining pain medications.

In addition, the ALJ improperly relied on a report by independent medical examiner Dr. Paul T. Hogya, M.D., to discount plaintiff's credibility without addressing subsequent information in the record which appears to contradict Dr. Hogya's report.   Dr. Hogya examined plaintiff in June 2007 in connection with a workers compensation claim for an allowed claim of

26

right dislocated knee NOS with additional conditions of right knee-medial meniscus tear and

sprain of the MCL and other sites, all of which were alleged to be related to an August 28, 2006

workplace injury.[8]   (Tr. 293-99).   The ALJ noted that according to Dr. Hogya, the evidence

contradicted plaintiff's allegation that the conditions at issue occurred as a result of plaintiff's

August 28, 2006 workplace injury.   (Tr. 23).   Dr. Hogya discounted the plausibility of a

workplace injury because plaintiff described a traumatic incident but continued his normal

activities and did not seek medical attention until 11 days after the incident, whereas in Dr.

Hogya's opinion a traumatic medical meniscus tear would be associated with substantial pain and

disability and would prompt urgent evaluation.   (Tr. 297).   The ALJ acknowledged that whether

or not plaintiff was injured at work was a collateral issue for Social Security disability purposes

but determined: "Nevertheless, if Dr. Hogya's *surmise* is credited, the claimant's willingness to

falsely portray a real injury as a workplace accident in order to obtain workers' compensation

would naturally severely impair the claimant's credibility with respect to subjective complaints,

not demonstrable by objective evidence, made in order to obtain Social Security disability

benefits."   (Tr. 18) (emphasis added).   At the same time, the ALJ noted that according to the

progress notes of plaintiff's treating orthopedic surgeon, Dr. Choudhury, the OBWC eventually

approved right knee surgery for plaintiff and Dr. Choudhury performed a right knee medial

partial meniscectomy in October 2007.   (Tr. 18-19).   Thus, it appears the OBWC made a

determination that plaintiff's right knee injury *was* the result of a workplace accident.   In

discounting plaintiff's credibility, the ALJ did not acknowledge the apparent inconsistency

between Dr. Hogya's finding that plaintiff's right knee injury could not have been sustained in a

---

[8] Plaintiff claimed that he sustained an injury on that date while employed with Queensgate Food Service when he
fell backwards, hyperextending his right leg and striking his knee on the ground.   (Tr. 293).

workplace accident and the OBWC's subsequent decision to allow plaintiff's right knee claim. The ALJ was not justified in relying on Dr. Hogya's "surmise" to find plaintiff less than credible without resolving the apparent discrepancy between Dr. Hogya's finding and the OBWC's decision to allow plaintiff's right knee claim.

In addition, the ALJ discounted plaintiff's credibility based on plaintiff's performance of limited "caretaker" duties at his apartment complex.   Plaintiff testified at the ALJ hearing that he was a "caretaker" for a ten-unit apartment building.   (Tr. 40).   Plaintiff described his caretaker duties as making phone calls to service providers to have apartments readied for new tenants and to have maintenance performed around the building.   (*Id*.).   Plaintiff estimated that he spends approximately 30 minutes or less a day on these activities, in exchange for which he receives a rent reduction of $325 per month.[9]   (*Id*.).   In discounting plaintiff's credibility, the ALJ stated:

> I also note that the claimant has sought multiple worker's compensation claims, though he continues to work as an apartment complex caretaker.   While the claimant minimized the extent of his activities, it is notable that his landlord finds them of at least some value, since he reduces the claimant's rent in exchange for these activities.

(Tr. 23).   The ALJ did not explain why plaintiff's performance of limited "caretaker" duties in exchange for a reduction in his rent reflected adversely on his credibility, and the reason is not clear from the record.   Thus, it is impossible to discern whether the ALJ's reason is supported by the record and is entitled to deference.   *Rogers*, 486 F.3d at 248 (SSR 96-7p requires the ALJ to explain his credibility determinations with sufficient specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

---

[9] Plaintiff also testified that his girlfriend with whom he shares the apartment sweeps the hall stairs twice a month. (Tr. 40).

Finally, in discounting plaintiff's credibility, the ALJ appears to have overstated the extent of plaintiff's daily activities.   The ALJ relied on plaintiff's reported ability to walk one block to a nearby restaurant and to perform sedentary activities such as reading newspapers, using the telephone, and watching television to find he was capable of a restricted range of sedentary work.   (Tr. 23).   However, as stated in connection with plaintiff's second assignment of error, the ALJ provided no indication as to how these activities denote an ability to walk/stand for more than five minutes at a time and to sit more than 30 minutes uninterrupted.   Thus, the ALJ did not reasonably rely on these reports of plaintiff's daily activities to discount plaintiff's complaints of disabling pain and limited functioning.   *Rogers*, 486 F.3d at 248 (the Court determined that the ALJ's finding that plaintiff was "still able to drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news" did not support his decision to discount plaintiff's credibility; not only had the ALJ mischaracterized plaintiff's testimony and failed to consider the impact of her impairments on how she performed the activities, but these "somewhat minimal daily functions are not comparable to typical work activities.").

Thus, upon review of the ALJ's decision, the Court finds that the ALJ's determination to not fully credit plaintiff's subjective statements regarding his disabling pain and the limiting effects of his impairments is not substantially supported by the evidence of record.   The ALJ misconstrued the evidence of record in material respects and made unsupported assumptions in discounting plaintiff's credibility.   As a result, the ALJ's credibility finding is not entitled to deference.   Plaintiff's third assignment of error should be sustained.

**III.   This matter should be reversed and remanded.**

Remand is appropriate if the Commissioner applied an erroneous principle of law or failed to consider certain evidence.   *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).   Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."   *Id.*   The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming.   *Faucher*, 17 F.3d at 176.

Reversal and remand of the ALJ's decision of this case is warranted for the reasons set forth above.   On remand, the ALJ should re-weigh the medical opinions of record, reassess plaintiff's credibility, and obtain additional medical and vocational evidence as warranted.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **REVERSED** and **REMANDED**.


Date:   11/25/14                    s/Karen L. Litkovitz
                                    Karen L. Litkovitz
                                    United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOHN HAROLD WYCOFF, JR.,                            Case No. 1:13-cv-641
      Plaintiff,                                   Barrett, J.
                                                    Litkovitz, M.J.

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

31